# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DIANE LYNNE ASHLINE, | ) | Bankruptcy No. 16-00567 |
| | ) | |
|     Debtor. | ) | |
| ------------------------------------------------------ | ) | |
| DIANE LYNNE ASHLINE, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 16-09028 |
| | ) | |
| UNITED STATES DEPARTMENT OF EDUCATION, | ) | |
| | ) | |
|     Defendant. | ) | |

## RULING ON DISCHARGEABILITY OF STUDENT LOANS

This matter came before the Court originally by evidentiary hearing in Cedar Rapids, Iowa. The Court withheld decision at the request of the parties while they attempted to resolve the matter. The parties were ultimately unable to reach settlement, and the parties informed the Court at a telephonic hearing on June 11, 2021 that the Court should go ahead and issue its decision. Diane L. Ashline (n/k/a Diane L. McKee) appeared pro se ("Debtor"). Martin J. McLaughlin appeared for the United States Department of Education ("DOE"). The Court took the matter under advisement on the previously submitted record. This is a core proceeding under 11 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Debtor owes more than $230,000.00 in student loan debt—some of which are private—others are federal loans and/or guaranteed. Debtor incurred her student loan debt in the process of earning an undergraduate degree in Paralegal Studies and a master's degree in Criminal Justice from Kaplan University. Debtor asserts that her master's degree has not translated to gainful employment in the faculty of criminal justice, and that her current employ does not provide her with sufficient means to pay her student loan debt without incurring undue hardship. Debtor claims that an Income Based Repayment ("IBR") plan will not help her as her expenses already exceed her monthly income. Debtor is also concerned by the prospect of a 'student loan forgiveness tax bomb' which would be due in-full immediately upon completion of an IBR plan.

DOE argues that Debtor can afford to make IBR payments without causing an undue hardship. DOE claims that these payments could be made while maintaining a minimal standard of living, and that Debtor has not carried her burden of calculating the potential tax implications of completing an IBR plan. DOE further asserts that Debtor is choosing to prioritize her private student loans, and that her request for discharge of her federal student loans is therefore unfair and unnecessary.

For the reasons that follow, the Court finds that not discharging Debtor's student loans would cause an undue hardship. Debtor's student loans are dischargeable under 11 U.S.C. § 523(a)(8).

## BACKGROUND

Debtor was a 47-year-old single mother who was working and has worked as a dental assistant for over 20 years. Debtor was raising her 16-year-old daughter and receives minimal monthly child support payments from her daughter's father. Debtor had an undergraduate degree in Paralegal Studies and a master's degree in Criminal Justice, both from Kaplan University.

During the course of her education at Kaplan, Debtor borrowed student loans from the DOE, and currently owes more than $230,000.00. Debtor borrowed for her master's degree in the hopes that she would obtain a lucrative job in the criminal justice field. This unfortunately has not been the case.

Debtor claimed that Kaplan not only promised job placement upon completion of her first degree, but also that Kaplan encouraged her to pursue her master's degree to improve her employment prospects despite having no prior job experience. Debtor admitted that she repeatedly borrowed the maximum amount of loans available in order to finance her suit for full custody of her daughter.

Debtor paid approximately $3,009.34 toward her student loan debt, had never been in default, and was paying $65.00 per month towards these loans before

3

her bankruptcy. These loans accrue interest at more than $30.00 per day. Debtor also had a co-signed private student loan of over $30,000.00. Debtor was paying more than $255.00 per month on the private student loan. That amount increases each year. Because the private loan is co-signed, Debtor testified that she felt obligated to continue paying on the private student loan—and not seek discharge for it—due to the resulting liability that the co-signor would incur.

## DISCUSSION

Section 523(a) of the Bankruptcy Code governs the dischargeability of student loans:

> A discharge . . . does not discharge an individual debtor from any debt . . . **unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents**, for . . . an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution . . .

11 U.S.C. § 523(a)(8) (emphasis added). "By excepting student loans from discharge, 'Congress intended to prevent recent graduates who were beginning lucrative careers and wanted to escape their student loan obligation from doing so.'" Martin v. Great Lakes Higher Educ. Grp. (In re Martin), 584 B.R. 886, 891 (Bankr. N.D. Iowa 2018) (quoting Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 554 (8th Cir. 2003). The term "undue hardship" is not defined by the Bankruptcy Code. As a result, bankruptcy courts have devised their

4

own tests. Conway v. Nat'l Collegiate Trust (In re Conway), 495 B.R. 416, 419 (B.A.P. 8th Cir. 2013).

The Eighth Circuit employs a "totality of the circumstances" test to determine whether excepting student loans from discharge "imposes an undue hardship on the debtor and the debtor's dependents." Id.; see In re Martin, 584 B.R. at 891; see also Schulstadt v. United States Dep't of Educ. (In re Schulstadt), 322 B.R. 863, 866 (Bankr. N.D. Iowa 2005) (noting that the Eighth Circuit first adopted this test in Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981)). Under this test, courts "consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable and necessary living expenses; and (3) any other relevant facts and circumstances." In re Long, 322 F.3d at 554. In applying this test, courts are required to examine the debtor's undue hardship arguments "on the unique facts and circumstances that surround the particular bankruptcy." Id. Debtor bears the burden of proving undue hardship by a preponderance of the evidence. Fern v. FedLoan Servicing (In re Fern), 553 B.R. 362, 367 (Bankr. N.D. Iowa 2016), aff'd 563 B.R. 1 (B.A.P. 8th Cir. 2017). Each factor will be considered in turn.

## I. Debtor's Past, Present, and Reasonably Reliable Future Financial Resources

The first factor to be considered is Debtor's "past, present, and reasonably reliable future financial resources." In re Long, 322 F.3d at 554.

Debtor was a 47-year-old single mother at the time of the hearing. She was employed as a dental assistant and had been for more than 20 years. Debtor's position earned her a gross monthly income of approximately $3,046.06, plus monthly child support payments of $230.00, for a total gross monthly income of approximately $3,276.06. (Ex. 2, 3, 4). After payroll deductions for taxes, insurance, and small retirement contribution, Debtor's net take-home pay was approximately $2,685.32 per month. (Id.).

Debtor testified that her advisors at Kaplan encouraged her to pursue her master's degree despite having no previous legal or criminal justice work experience. Debtor further testified that she was promised job placement assistance by Kaplan, but never received it. To date, Debtor has yet to secure lucrative employment in the criminal justice field.

The record indicates that Debtor was maximizing her earning potential at the time of the hearing. There was no evidence produced to suggest that she would be able to leverage her unused master's degree to obtain a higher paying job in the future. There was likewise no suggestion that her income would increase in any meaningful way over the remainder of her working life.

## II.     Debtor's Reasonable and Necessary Living Expenses

The second factor to be considered is the Debtor's "reasonable and necessary living expenses." In re Long, 322 F.3d at 554.  A debtor must be allowed at least a "minimal standard of living." Abney v. U.S. Dept. of Educ. (In re Abney), 540 B.R. 681, 686 (Bankr. W.D. Mo. 2015).  "A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing, and medical treatment." Id. (internal quotation marks omitted).  "To be reasonable and necessary, an expense must be 'modest and commensurate with the debtor's resources.'" Nielsen v. ACS, Inc. (In re Nielsen), 473 B.R. 755, 760 (B.A.P. 8th Cir. 2012) (quoting Educ. Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 780 (8th Cir. 2009)).

Debtor listed total monthly expenses of $3,060.86 as of August 12, 2018 and total monthly income as $2,790.76—a net deficit of approximately $270.10.  (Exs. 5, 6; compare Exs. 2, 3, 4).  At the time of the hearing, Debtor's income covered most of her and her daughter's needs, but it did not provide disposable income to pay an IBR plan payment.

This Court finds that the Debtor's expenses are, indeed, modest and commensurate with her resources, and that she is very frugally meeting her needs for food, shelter, clothing, and medical treatment. She claims almost no expenses whatsoever for items such as eating out, entertainment, pets, and the like. This

Court finds that the Debtor's expenses are, therefore, reasonable and necessary for a minimal standard of living.

### III. Other Relevant Facts and Circumstances

The final factor to be considered is "any other relevant facts and circumstances." In re Long, 322 F.3d at 554. The primary issue raised under this analysis is whether discharge is necessary in light of available IBR plans.

DOE claims that an IBR plan requiring a monthly payment of $65.00 per month is available to Debtor. Under an IBR plan, Debtor's remaining obligation on her federal student loans—no matter how large—would be cancelled. The typical IBR plan requires payment over 20 to 25 years. The Eighth Circuit has held that "a student loan should not be discharged when the debtor has 'the ability to earn sufficient income to make student loan payments under the various special opportunities made available through the student loan program.'" Educ. Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 781 (8th Cir. 2009). However, a debtor's "eligibility for income-based repayment plans is 'one factor in [the totality of the circumstances] analysis.'" In re Fern, 553 B.R. at 369–71; In re Martin, 584 B.R. at 893–94.

In considering potential IBR plans, the Court must "be mindful of both the likelihood of a debtor making significant payment under the [income-based repayment plan], and also of the additional hardships which may be imposed by

these programs." In re Martin, 584 B.R. at 894 (quoting In re Fern, 553 B.R. at 369) (internal citation omitted). "Additional hardships" can include the likely growth of the debt over the court of the IBR plan, the effect on Debtor's ability to obtain future credit, the mental and emotional impact on Debtor, and the likely consequences due to debt collection. Id.

Debtor was 47 years old at the time of the hearing—she is now 50. Upon completion of a hypothetical IBR plan, she would be between 69 and 74 years old. Over 20 to 25 years, the most Debtor would pay off would be between $15,600.00 and $19,500.00 (which exceeds—albeit marginally—5–8% of her current debt (without accounting for future compounding interest)). Meanwhile, her current debt will continue to grow, and her interest will far outpace that which she will be able to pay off.

Even if Debtor were to complete an IBR plan, she faces the possibility of a "student loan forgiveness tax bomb"—which would be due in-full immediately when the debt is forgiven. To be sure, section 61(a)(11) of the United States Tax Code provides that defines the term "gross income" as "all income from whatever source derived, including . . . income from discharge of indebtedness." 26 U.S.C. § 61(a)(11). Debtor would be excepted from taxation only to the extent her liabilities, at the time of the discharge, exceed her assets. 26 U.S.C. § 108(a)(1)(B) (excepting income from discharge of indebtedness when the discharge occurs

9

when the taxpayer is insolvent); see also 26 U.S.C. § 108(d)(3) (defining "insolvent" as "the excess of liabilities over the fair market value of assets.").

Thus, to the extent Debtor is able to timely pay her IBR obligations, as well as her other expenses, and to somehow meaningfully accrue reserves to fall back on in the event of retirement, she would be greeted with a tax bill in the amount of all remaining principal, interest, and other charges due—at a time when Debtor is nearing 70 years of age or older. Not only would such a result be devastating, it would effectively disregard the overarching policy of the Bankruptcy Code to provide debtors with a "fresh start."

> While "the mere possibility of tax consequences at the expiration of the 25-year repayment period is not dispositive of the issue of whether the [IBR plan] represents a viable avenue for repayment of the student loan debt," it is a factor which may and should be considered based on the facts of a particular case.

In re Fern, 553 B.R. at 370 (quoting In re Abney, 540 B.R. at 690). The Court finds this factor to be of great weight in its analysis. Debtor would likely be retired at the point in which her student loans are forgiven and on a fixed income relative to whatever degree of retirement she is able to accumulate between now and then. Debtor's financial circumstances do not suggest that she will be able to accumulate any significant assets for extraordinary expenses in her later years. In the event she does, she'll be rewarded with a tax bill for which she's unlikely to be capable of satisfying.

Based on the forgoing, the Court finds that the Debtor has proven, by a preponderance of the evidence, that not discharging her student loans would impose an undue hardship on her and her dependents. She has maximized her earnings potential. Her future financial condition is not likely to improve to any significant degree. She had only recently begun saving for retirement at the time of the hearing by making modest contributions to her 401(k). Her expenses are not extravagant. Debtor has made the good faith effort to make payments on her student loans—both private and federal—and has deferred those payments when she was unable to make them.

The availability of the IBR plan is not dispositive of the issue—nor does it provide any value to Debtor's current or future situation. Indeed, the evidence is that completing such a plan would impose significant additional burdens on her. Participation and completion of such a plan has a reasonable likelihood of resulting in her trading a student loan debt for an IRS debt. Such a result runs in direct contravention to the "fresh start" the Bankruptcy Code is intended to provide.

For the reasons stated herein, the Court finds that Debtor has met her burden of proving that repaying her student loans imposes an undue hardship on her, and that they should be discharged under 11 U.S.C. § 523(a)(8).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Debtor's student loan debts constitute an undue hardship for purposes of 11 U.S.C. § 523(a)(8) and are accordingly discharged as part of the general discharge entered in Debtor's main bankruptcy case 16-00567.

Dated and Entered:

September 28, 2021

THAD J. COLLINS,
CHIEF BANKRUPTCY JUDGE